IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **HALIMAH Y. HASSAN,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| v. : | **CIVIL ACTION FILE NO.** |
| : | **1:16-cv-00162-WSD-AJB** |
| **MEGAN J. BRENNAN,** : | |
| *Postmaster General, United States* : | |
| *Postal Service Agency*, : | |
| : | |
| **Defendant.** : | |

**UNITED STATES MAGISTRATE JUDGE'S**
**<u>FINAL REPORT AND RECOMMENDATION</u>**

This matter is presently before the Court for frivolity review pursuant to 28 U.S.C. § 1915(e). For the reasons below, the undersigned **RECOMMENDS** that the case be **DISMISSED**.

*I.    Background*

Plaintiff Halimah Y. Hassan, proceeding *pro se*, filed an application to proceed *in forma pauperis* ("IFP"), seeking to bring a civil action against Defendant Megan J. Brennan, in her official capacity as Postmaster General of the United States Postal Service Agency. [Doc. 1-1]. Plaintiff stated that she was an employee of the United States Postal Service from August 27, 2011, through her termination in

April 2014, and she asserted claims for harassment, retaliation, and wrongful termination. [Doc. 1 at 6; Doc. 1-1 ¶¶ 18, 68, 73, 75].

On April 15, 2016, the Court entered an Order granting the application to proceed IFP. [Doc. 2]. The Court, however, also found that the complaint lacked factual allegations sufficient to state a claim and was also an impermissible "shotgun pleading," and the Court therefore could not conduct the frivolity review required under 28 U.S.C. § 1915(e). [*Id*. at 5-12]. It therefore directed Plaintiff to replead her complaint according to certain terms and conditions. [*Id*. at 12-13].

On May 3, 2016, Plaintiff timely filed a first amended complaint, [Doc. 5], and on May 5, 2016, she timely filed a second amended complaint, [Doc. 6]. The second amended complaint having superseded the first amended complaint, *see Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1345 n.1 (11th Cir. 1999) ("An amended complaint supersedes an original complaint."); *Varnes v. Local 91, Glass Bottle Blowers Ass'n*, 674 F.2d 1365, 1370 n.6 (11th Cir. 1982) ("As a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading."), the Court shall now consider whether the second amended complaint is sufficiently pleaded, [Doc. 6].

## II.     *Frivolity Review*

### A.     *Standard*

Because the undersigned has determined in a separate Order that Plaintiff may proceed IFP, [Doc. 2], the Court must perform a frivolity review pursuant to 28 U.S.C. § 1915(e). Under 28 U.S.C. § 1915(e), a court must "*sua sponte* dismiss [an indigent non-prisoner's] complaint or any portion thereof which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune." *Robert v. Garrett*, No. 3:07-cv-625, 2007 WL 2320064, at *1 (M.D. Ala. Aug. 10, 2007); *see also* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).  A claim is frivolous under § 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" *Napier v. Preslicka*, 314 F.3d 528, 531 (11th Cir. 2002) (quoting *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001)). A litigant does not state a claim under § 1915(e)(2)(B)(ii) "when the facts as pleaded do not state a claim for relief that is 'plausible on its face.'" *Thompson v. Fernandez Rundle*, 393 Fed. Appx. 675, 678 (11th Cir. Aug. 20, 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A *pro se* pleading is liberally construed. *Douglas v. Yates*, 535 F.3d 1316, 1320 (11th Cir. 2008). However, this leniency does not permit the district court to act as counsel for a party or to rewrite deficient pleadings. *Lampkin-Asam v. Volusia Cnty.*

AO 72A
(Rev.8/82)

*Sch. Bd.*, 261 Fed. Appx. 274, 276-77 (11th Cir. Jan. 9, 2008) (per curiam) (citing *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998)); *see also GJR Invs., Inc.*, 132 F.3d at 1369 ("Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party . . . .").

### B.  *Analysis*

In its Order granting Plaintiff leave to amend the complaint, the Court noted that although the factual allegations in the original complaint were not entirely clear, Plaintiff appeared to assert that during the time period relevant to her claims, she worked for the U.S. Postal Service as a Sales and Service Associate; on April 26, 2013, she made a complaint to the Equal Employment Opportunity Commission ("EEOC") regarding disparities in treatment among junior and senior postal service employees and discrepancies in pay; the EEOC found in her favor, but instead of complying with the EEOC's decision, Plaintiff's supervisors began treating her unfairly and differently from other employees by doing things like changing her work location and hours without notice, denying her reasonable breaks, suspending her without cause, treating her rudely and in a physically threatening manner, requiring her to perform work outside of her job description, and ultimately, wrongfully terminating her by falsely stating that she had resigned. [Doc. 2 at 6-7 [citing Doc. 1-1 ¶¶ 8-69]]. The Court also

AO 72A
(Rev.8/8
2)

noted that the complaint contained references to alleged violations of a collective bargaining agreement. [Doc. 2 at 6-7 [citing Doc. 1-1 ¶¶ 36, 67]].

The Court observed, however, that although Plaintiff had generally alleged claims of harassment, retaliation, and wrongful termination, she had not made clear which facts she provided with the intent of adding context to her claims and which she contends are actionable; she did not state the statutory basis for her claims; she did not provide a copy of the EEOC charge she appeared to allege gave rise to her claims; and she had not shown that she received a notice of right to sue from the EEOC or otherwise exhausted any necessary administrative remedies prior to filing suit. [Doc. 2 at 11-12]. The Court therefore found that the complaint failed to provide the "short and plain statement" of each claim, as required under Rule 8(a) of the Federal Rules of Civil Procedure; did not provide facts sufficient to show that each claim is plausible, according to the pleading standard set forth by the United States Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); and was "so vague or ambiguous" that Defendant could not be reasonably expected to prepare a response, Fed. R. Civ. P. 12(e). [*Id*. at 12].

For these reasons, the undersigned found the original complaint insufficient to survive the frivolity review required under 28 U.S.C. § 1915(e). [Doc. 2 at 12]. In

5

light of Plaintiff's *pro se* status, however, the Court granted her leave to amend the complaint and provided specific direction:

    1.    Plaintiff **SHALL** provide a factual background section with facts relevant to all claims, presented in logical order in individually numbered paragraphs.

    2.    Then, Plaintiff **SHALL** allege each cause of action under a separate count.  Immediately below each count heading, Plaintiff **SHALL** provide the relevant facts, including the approximate dates of significant relevant occurrences and, when possible, the individual who undertook the conduct that Plaintiff believes was unlawful and entitles her to relief.

    3.    Each count of the amended complaint **SHALL NOT** re-affirm and re-allege all factual allegations from the preceding counts, but instead, only the relevant paragraphs from the factual background section.

    4.    If she continues to seek damages, Plaintiff **SHALL** clearly state the grounds upon which she seeks damages and the amount.

    5.    Plaintiff also **SHALL** attach all relevant charges of discrimination she filed with the EEOC and all notices of decisions she may have received, or she must explain why copies of the documents are not available.

[*Id*. at 12-13].  The Court also advised Plaintiff that failure to comply with this Order would result in a recommendation to the District Judge that he dismiss this matter for failure to state a plausible claim and for failure to follow a lawful order of the Court. [*Id*. at 13].

6

AO 72A
(Rev.8/82)

In her second amended complaint, Plaintiff did provide a section in which she asserted background facts in individually numbered paragraphs. [Doc. 6 ¶¶ 7-11]. Plaintiff states that she was hired as a Postal Service Employee ("PSE") on August 27, 2011; that beginning in November 2012, supervisors and other employees "engaged in a continuous course of harassment, intimidation, hostility, and retaliation against Plaintiff because of her continued complaints and reports of events and practices that caused stress and humiliation"; and that her employment continued until April 14, 2014, when Defendant terminated her "in retaliation for her numerous complaints and reports regarding events and practices that created an unfair, threatening, and hostile environment." [*Id*. ¶¶ 7-8]. More specifically, she states that on April 26, 2013, she made a complaint to the EEOC in Case Number 4K-300-0134-13, regarding "disparities in treatment pertaining to a Junior PSE and discrepancies in pay"; in October 2013, she "filed a grievance due to Manager James Howard harassing her"; on November 1, 2013, she was "verbally assaulted by Career employee Jameelah Johnson on the retail window in front of customers"; later that month, Johnson "attempted to hit Plaintiff with a 400 pound metal [t]ram used to carry loads of mail"; after the incident, she "approached Supervisor Michelle Cooper and advised that she was put in physical danger"; "on

7

many occasions she was made to perform the duties of career employees in another pay grade" and "was made to also do accounting for the entire Postal Service retail store at the Midtown location on a daily basis after the retail window closed"; on April 16, 2014, Manager Priscilla Rainwater told her that she would be written up as absent without leave for the previous day and told her to "leave and don't come back without the union"; that same day, Plaintiff filed a discrimination complaint with the EEOC, case number 4K-300-0152-14; on May 6, 2014, Manager Rainwater told Plaintiff that she had submitted formal documents requesting termination; and later, Defendant falsely stated that Plaintiff had resigned from her position. [*Id*. ¶ 8].

Plaintiff also asserted her claims in five separate counts: (1) wrongful termination (breach of contract); (2) wrongful termination (public policy violation); (3) negligent infliction of emotional distress; (4) retaliation; and (5) harassment. [*Id*. ¶¶ 12-34]. In direct contravention of the Court's Order, however, Plaintiff did not specify the factual allegations underlying each count of the complaint, but instead stated in the first paragraph of each count that she "allege[d] all the allegations contained in the complaint . . . and incorporated them by reference." [*Id*. ¶¶ 12, 18, 23, 26, 30]. The Court has already explained to Plaintiff that such pleadings are prohibited because they cause counts to contain irrelevant factual allegations and legal conclusions that make

8

it virtually impossible for the Court and the defendant to know which allegations of fact are intended to support which claims for relief, which wreaks havoc on the judicial system. [Doc. 2 at 9-10]. Plaintiff also again failed to state the statutory basis for her claims,[1] and she did not provide a copy of any EEOC charge or other complaint she made, did not show that she received a notice of right to sue from the EEOC, or explain why the documents were not available. [Doc. 6, *passim*]. Accordingly, the second amended complaint is, like the original complaint, subject to dismissal as an impermissible shotgun pleading, *see Byrne v. Nezhat*, 261 F.3d 1075, 1130 (11th Cir. 2001), *abrogated on other grounds by Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146 (11th Cir. 2011), and it is also subject to dismissal for failure to comply with a lawful Order of the Court, LR 41.3, NDGa.[2, 3]

---

[1] Georgia is a strict "at-will" state, with few "public policy" exceptions to the proposition that the employment of an at-will employee can be terminated for any reason whatsoever or for no reason at all. *Thomas v. HL-A Co.*, 313 Ga. App. 94, 96, 720 S.E.2d 648, 651 (2011). Thus, wrongful-termination claims generally require a statutory basis or facts at least suggesting the existence of an employment contract, neither of which are set forth in the second amended complaint. [*See* Doc. 6, *passim*].

[2] Plaintiff's claim for negligent infliction of emotional distress is alternatively subject to dismissal because "Georgia law does not recognize a cause of action for the tort of 'negligent infliction of emotional distress.' " *See Harris v. Fulton-DeKalb Hosp. Auth.*, 255 F. Supp. 2d 1347, 1377-78 (N.D. Ga. 2002) (Baverman, M.J., *adopted, in relevant part*, by Thrash, J.). A plaintiff in Georgia may not raise a claim for negligent infliction of emotional distress as a separate tort; instead,

such a plaintiff can only be awarded damages for emotional distress in a claim involving negligent conduct where she has proven the defendant liable for otherwise negligent conduct that caused her physical impact and resulted in physical injury. *Id.* at 378; *Ryckeley v. Callaway*, 261 Ga. 828, 828, 412 S.E.2d 826, 826 (1992). This "impact" rule has three elements: "(1) a physical impact to the plaintiff; (2) the physical impact causes physical injury to the plaintiff; and (3) the physical injury to the plaintiff causes the plaintiff's mental suffering or emotional distress." *Clarke v. Freeman*, 302 Ga. App. 831, 836, 692 S.E.2d 80, 84 (2010). In the absence of an impact, the plaintiff may recover only if she can show that the defendant's conduct was "malicious, wilful, or wanton." *Id.*, 692 S.E.2d at 84.

Here, the Court finds nothing in the second amended complaint to suggest that Defendant's conduct resulted in a physical impact on Plaintiff. [*See* Doc. 6, *passim*]. Nor does the complaint contain facts that would allow a reasonable finder of fact to determine that Defendant's conduct was malicious, wilful, or wanton. [*See id.*]. It also appears that Plaintiff's claim for negligent infliction of emotional distress would also be barred as a matter of law by the "exclusive remedy" provision of Georgia's Workers' Compensation Act. *See Webster*, *Webster v. Dodson*, 240 Ga. App. 4, 6, 522 S.E.2d 487, 489 (1999) (noting that "[u]nder OCGA § 34-9-11(a), the Georgia Workers' Compensation Act is now the exclusive remedy for injuries sustained by an employee during the course of employment resulting from the negligence of a co-worker," and that "[a]n injury arises 'in the course of employment' when it occurs within the period of the employment, at a place where the employee may be in performance of her duties and while she is fulfilling or doing something incidental to those duties"). Accordingly, the undersigned concludes that Plaintiff's claim for negligent infliction of emotional distress may also be dismissed for failure to state a claim for relief. *See Hill v. Ford Motor Co.*, 975 F. Supp. 2d 1351, 1360 (N.D. Ga. 2013) (Carnes, J.) (granting a motion to dismiss negligent-infliction-of-emotional-distress where it was clear that plaintiffs could not plead facts to satisfy impact rule).

[3] It is also notable that in order for a harassment claim to be actionable under Georgia law, the plaintiff must show, among other things, that the defendant, in the exercise of reasonable care, should have known of the harassing employee's

10

The Court recognizes that an attachment to Plaintiff's second amended complaint suggests that the charge she initiated on April 26, 2013, contained allegations that on January 1, 2013, she had suffered some sort of adverse action relating to her duty hours in retaliation for having filed a union grievance, being a single mother, and being perceived to be Muslim. [Doc. 6-1 at 1-3]. It therefore appears that she may seek to assert claims for interference with her rights as a union member pursuant to the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151-69, and for sex- and religion-based discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.* The same attachments also show, however, that Plaintiff settled her charge and waived her rights to any further pursuit of those claims on July 22, 2013, when Defendant agreed to a pay adjustment for ten

---

reputation for harassment, it was foreseeable that the employee would engage in harassment of a fellow employee, and he was nonetheless continued in his employment, *Orquiola v. Nat'l City Mortg. Co.*, 510 F. Supp. 2d 1134, 1162 (N.D. Ga. 2007) (citing *Coleman v. Hous. Auth. of Americus*, 191 Ga. App. 166, 170, 381 S.E.2d 303, 307 (1989), and that for a harassment claim to be actionable under federal civil rights statutes, the plaintiff must show, among other things, that the harassment was based on the employee's protected status and was " 'sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment,' " *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1257 (11th Cir. 2003) (quoting *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc)), yet the second amended complaint sets forth no facts that would enable a reasonable finder of fact to determine that Plaintiff can make such showings.

11

hours of annual leave.[4]  [*Id.* at 4-5].  It therefore appears that the claim—to the extent that Plaintiff now intends to assert it—was voluntarily dismissed some time ago.

The Court also recognizes that other attachments to the second amended complaint suggest that the charge Plaintiff initiated on April 16, 2014, contained allegations that Defendant discriminated against her or harassed her based on her sex and retaliated against her based on prior EEOC activity, all in violation of Title VII, when on March 18, 2014, she was not chosen to attend training; on unspecified dates, her hours were changed or reduced; on unspecified dates, she was sent to various workstations to work; on or around April 15, 2014, she was charged absent without leave and was instructed to sign multiple acknowledgment forms; on or around April 16, 2014, her identification badge was taken, she was sent home, and management said her termination would be requested; and on May 6, 2014, she was given an investigative interview.  [Doc. 6-2 at 10-11].  The attachment also indicates that the processing of Plaintiff's charge has progressed at least to the point at which an administrative law judge ("ALJ") was assigned to hear the case and the matter came before the ALJ upon a motion for summary judgment.  [*Id.* at 10-22].

---

[4] It appears that Defendant also preliminarily agreed to a training opportunity for Plaintiff but that the training was cancelled before Plaintiff signed the settlement agreement on July 8, 2013.  [Doc. 6-1 at 5].

It is impossible, however, to determine whether Plaintiff fully exhausted her administrative remedies on the other claims described in the attachment prior to filing this lawsuit. In general, before filing an action under Title VII, a plaintiff must exhaust her administrative remedies by filing a charge of discrimination with the EEOC. *Rizo v. Ala. Dep't of Human Res.*, 228 Fed. Appx. 832, 836 (11th Cir. Jan. 31, 2007) (per curiam); *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004); *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460 (5th Cir. 1970).[5] The purpose of this exhaustion requirement "is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Gregory*, 355 F.3d at 1279 (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983)).

Administrative exhaustion consists of two elements. First, the EEOC charge of discrimination must be timely filed. *Wilkerson*, 270 F.3d at 1317. Second, the plaintiff may not allege new acts of discrimination in the judicial complaint that were not raised

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

in the EEOC charge, although a plaintiff may bring claims that "amplify, clarify, or more clearly focus" the allegations in the EEOC complaint. *Gregory*, 355 F.3d at 1279-80 (quoting *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989)). "Courts are nonetheless 'extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII],' " such that the EEOC charge is not to be "strictly interpreted." *Gregory*, *id.* (quoting *Sanchez*, 431 F.2d at 460-61, 465).

The administrative prerequisites to filing a Title VII claim that apply to federal-government employees are somewhat different from the usual prerequisites that apply to other employees. *See Brown v. Gen. Servs. Admin.*, 425 U.S. 820 (1976) (discussing 42 U.S.C. § 2000e-16, which applies Title VII's prohibitions to federal agencies). The Eleventh Circuit Court of Appeals has held:

> Before an aggrieved employee may seek relief through the filing of a civil action in federal court, § 717(c) requires that he or she must first seek relief in the agency that has allegedly engaged in discrimination. . . . This requirement is not a technicality; rather, it is part and parcel of the congressional design to vest in the federal agencies and officials engaged in hiring and promoting personnel primary responsibility for maintaining nondiscrimination in employment.

*Grier v. Sec'y of the Army*, 799 F.2d 721, 724 (11th Cir. 1986) (internal citations and quotations omitted).

14

To begin the process, a federal employee must first "initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). The regulations provide that the Counselors must advise the employee in writing of her rights and responsibilities, including the requirement that "only the claims raised in pre-complaint counseling (or issues or claims like or related to issues or claims raised in pre-complaint counseling) may be alleged in a subsequent complaint filed with the agency." 29 C.F.R. § 1614.105(b)(1); *see also Favors v. Donahoe*, Civ. Action File No. 1:12-CV-00782-TWT-GGB, 2012 WL 6917781, at *4 (N.D. Ga. Dec. 27, 2012) (Brill M.J.) ("An employee generally must raise all claims at the counseling stage, and cannot raise new claims for the first time in a formal complaint."), *adopted at* 2013 WL 234401 (N.D. Ga. Jan. 18, 2013) (Thrash, J.).

If the agency counselor is unable to resolve the situation and the employee does not consent to an extension of time or to alternative dispute resolution procedures, the counselor must within thirty days issue a notice of the employee's right to file a written complaint of discrimination with the employing agency within fifteen days of receipt of the notice. 29 C.F.R. §§ 1614.105(d), 1614.106(a)-(b). The complaint must contain a signed statement from the aggrieved employee or the employee's attorney and must

15

be sufficiently precise to identify the aggrieved employee and the agency and to "describe generally the action(s) or practice(s) that form the basis of the complaint."[6] 29 C.F.R. § 1614.106(c). The agency must then conduct an "impartial and appropriate investigation of the complaint" and has at least 180 days within which to do so.[7] 29 C.F.R. § 1614.106(e)(2). At the conclusion of the investigation, the agency must provide the employee with a copy of the investigative file and notify her that she has the right within the following thirty days to request a hearing and decision from an ALJ or request a final decision from the agency with which the complaint was filed. 29 C.F.R. § 1614.108(f). Once requested and appointed, the ALJ has full responsibility for adjudication of the complaint, including the power to decide the matter upon a motion for summary judgment. 29 C.F.R. § 1614.109(a), (g). The ALJ is to issue a decision within 180 days of receipt of the complaint file from the agency.

---

[6] The employee may amend the complaint "to include issues or claims like or related to those raised in the complaint." 29 C.F.R. § 1614.106(d). She may do so at any time during the pendency of the investigation, and after requesting a hearing, she may do so by filing a motion with the ALJ. *Id.* The agency is required to acknowledge receipt of the complaint or amendment to the complaint in writing. 29 C.F.R. § 1614.106(e).

[7] Unless the time period has been properly extended, the employee may file suit in federal court if 180 days pass after the filing of her agency complaint and the agency has not yet taken final action. 29 C.F.R. § 1614.407(a), (b).

AO 72A
(Rev.8/82)

29 C.F.R. § 1614.109(i). Once the ALJ sends the decision to the parties, the agency must issue a final order within the next forty days, or the decision of the ALJ becomes the final action of the agency. *Id*. Once the employing agency issues a notice of final action on the complaint, the employee then has thirty days in which to appeal the decision to the EEOC or ninety days to file a lawsuit in federal court.[8] 29 C.F.R. §§ 1614.106(e)(1), 1614.110, 1614.401, 1614.402(a), 1614.407.

Here, attachments to Plaintiff's second amended complaint indicate that she pursued her administrative remedies at least so far as to reach an ALJ and that the matter came before the ALJ on a motion for summary judgment filed by the agency. [*See* Doc. 6-2 at 10-24]. However, neither the second amended complaint nor its attachments indicate whether the ALJ decided the motion, or if she did, what she decided and when; rather, Plaintiff's filings indicate that the agency filed a proposed dispositive order with the ALJ in conjunction with its motion for summary judgment, that Plaintiff mistook the proposed order to be the ALJ's adjudication of the matter, and that Plaintiff then filed an appeal with the EEOC, which the agency then sought to have dismissed as premature. [*Id*. at 1-24]. There is no further indication in the second

---

[8] An appeal to the EEOC tolls the deadline for filing suit in federal court. *Conkle v. Potter*, 352 F.3d 1333, 1335-37 (10th Cir. 2003); *Jones v. Wynne*, No. 5:06cv96/RS, 2007 WL 1655405, at *7 (N.D. Fla. June 6, 2007).

amended complaint or in any of the attachments whether the EEOC appeal was in fact dismissed, whether the ALJ ever adjudicated the motion for summary judgment, whether the agency ever issued a final order and issued Plaintiff a notice of right to sue, whether Plaintiff timely appealed any final order to the EEOC, or whether Plaintiff's suit in this Court was filed within ninety days of the agency's final order or the final decision upon appeal to the EEOC.  [*See* Doc. 6, *passim*].  As a result, the Court is unable to determine whether the claims apparently asserted in charge number 4K-300-0152-14 are ripe for review, or conversely, whether the filing deadline passed prior to Plaintiff's initiation of this lawsuit.

For all of these reasons, the second amended complaint does not cure the problems the Court identified for Plaintiff in its Order of April 15, 2016.  As a consequence, the undersigned remains unable to find that Plaintiff has stated a plausible claim for relief such that her action may survive the frivolity review required under 28 U.S.C. § 1915(e).

### III. *Conclusion*

For the reasons set forth above, the undersigned finds that Plaintiff has failed to state a non-frivolous claim and further finds that Plaintiff has failed to follow a lawful

18

Order of the Court. It is therefore **RECOMMENDED** that the District Judge **DISMISS** Plaintiff's complaint and **DIRECT** the Clerk to close the case.

The Clerk is **DIRECTED** to terminate the referral to the undersigned.

**IT IS SO RECOMMENDED and DIRECTED**, this 25th day of July, 2016.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE